In re the Visitation of A.B.

Buddy and Clara BARR, Appellants (Plaintiffs),

v.

Cathy Ann THOMAS and Charles Kevin Barr, Appellees (Defendants).

No. 49A02–9105–CV–195.

Court of Appeals of Indiana, Second District.

Dec. 23, 1991.

Maureen E. Gaddy, Gaddy & Gaddy, Indianapolis, for appellants.

Kay A. Beehler, Indianapolis, for appellees.

BUCHANAN, Judge.

CASE SUMMARY

Appellants-plaintiffs Buddy Barr (Buddy) and Clara Barr (Clara) appeal the dismissal of their petition requesting court-ordered visitation rights to see their grandchild.

We reverse and remand for a hearing.

## FACTS

The facts most favorable to Buddy and Clara, the non-moving party as to the motion to dismiss, show that Cathy Ann Thomas (Cathy) is the natural mother of A.B., a child born out of wedlock on September 29, 1982. In a paternity action initiated by Cathy, Charles Kevin Barr (Kevin), was determined to be the father of the child. The court granted Cathy custody of the child and awarded Kevin visitation rights. The court did not then order support, but, in 1987, the court modified the order to reflect that Kevin had been ordered to pay thirty dollars per week in child support. Cathy and Kevin have lived together since 1982.,

Buddy and Clara, the paternal grandparents of A.B., had been permitted to visit their grandchild until approximately July 22, 1990. On October 13, 1990, they petitioned the trial court to order grandparent visitation in accordance with Ind.Code 31–1–11.7–2 (1989) (hereinafter the "Grandparent Visitation Statute") and argued that such visitation was in the best interests of their grandchild. Cathy and Kevin moved to dismiss the petition claiming Buddy and Clara were prohibited by the custody provision of the statute from seeking court-ordered visitation. Following a hearing on December 20, 1990, the trial court issued conclusions of law dismissing Buddy and Clara's petition for visitation rights:

"2. The spirit and intention of the statute, taken as a whole, does not provide for a grandparent to intervene in an intact family such as the one established by Cathy Ann Thomas and Charles Kevin Barr, for their son, [A.B.].

3. The statute's intent is designed to provide visitation for parental grandparents which would survive the death of a son or the dissolution of that son's marriage. It was not designed to override the living child's right and duty to raise his child (their grandchild) without interference and as he sees fit, including restricting or terminating his child's contact with any person absent a court order to the contrary.

4. *While Charles Kevin Barr has not been awarded legal custody, in the true sense of the word, he has by his continuous cohabitation with Cathy Ann Thomas, had physical custody of his son since birth.*

5. The totality of the circumstances, taken together with a reading of the statute, precludes the grandparents, Buddy and Clara Barr, from bringing this action and precludes them from prevailing on their petition for visitation. The Petition is Denied. The Motion [t]o Dismiss is granted."

*Record* at 63. (emphasis supplied.)

No evidence was taken at the hearing regarding whether grandparent visitation was in the best interests of A.B.

## ISSUE

On appeal, Buddy and Clara raise three issues which we consolidate and restate as one:

Does the Grandparent Visitation Statute bar paternal grandparents from seeking visitation rights when the father of the child, who is not married to the mother, is nonetheless living with her and assisting her in raising the child?

## DECISION

*PARTIES CONTENTIONS*—Buddy and Clara claim that Kevin was not "awarded custody" of A.B. and, therefore, the custody provision of the Grandparent Visitation Statute does not bar them from seeking court-ordered visitation. Kevin and Cathy would interpret the custody provision of the Grandparent Visitation Statute as intending that families which are "intact" should not be interfered with by court-ordered grandparent visitation.

*CONCLUSION*—As Kevin has not been awarded custody of A.B., the Grandparent Visitation Statute does not bar Buddy and Clara from seeking visitation rights. The trial court erred in failing to hold a hearing to determine whether grandparent visitation was in A.B.'s best interests.

Obviously we begin with an examination of the Grandparent Visitation Statute, which provides in pertinent part:

"(a) A Court *may not* grant visitation under this chapter after May 8, 1989, to a grandparent who is the parent of a person:

(1) who is not deceased; and

(2) *who has been awarded custody of the grandchild.*

. . . . .

(c) A child's paternal grandparent may seek visitation rights if:

(1) the child's father is deceased;

(2) the marriage of the child's parents has been dissolved in Indiana; or

(3) the child was born out of wedlock and the paternity of the child has been established in the son of the grandparent. . . ."

IC 31-1-11.7-2(a, c) (emphasis supplied).

It is undisputed by the parties that the conditions set forth in Subsection (c)(3) have been satisfied. They cross swords on the question of whether Kevin has been "awarded custody" of A.B. within the meaning of Subsection (a) so as to bar the grandparents, Buddy and Clara, from seeking court-ordered visitation.

This statute looms on the horizon as a legislative enactment on this subject, bright, clear, and unobstructed. There is no question that Cathy has been awarded custody and Kevin ordered to pay support and have visitation rights. Kevin simply has not been "awarded custody" by any reasonable interpretation of this term so as to bring himself within the exception to the statute granting grandparents visitation rights.

The language of Subsection (a) is unambiguous. When a father is *awarded custody* of a child, a court may not order grandparent visitation contrary to the wishes of the parent. Kevin has not lacked avenues of obtaining custody or joint custody. There is a specific statutory procedure by which he could have sought custody of A.B. and thus could have protected himself from what he may consider to be "grandparent meddling." *See* Ind.Code 31-1-11.6-25 (1988). Instead Kevin seeks to restrict the scope of an unambiguous statute.

While Kevin and Cathy set forth legitimate *policy* reasons why the reach of the Grandparent Visitation Statute should be limited, their argument is more properly addressed to the legislature. Policy considerations are not a vehicle to circumvent or expand the plain meaning of the words of this statute. Our role on appeal is to interpret and apply the statute, and absent some ambiguity, we may not substitute language which is not there.

So it follows that as Kevin has not been awarded custody as provided in Subsection (a), Buddy and Clara are entitled to a hearing to determine whether visitation is in A.B.'s best interests and, if so, under what terms and conditions those visitation rights might be exercised. *See* IC 31-1-11.7-3 (1989). In addressing these issues the trial court may certainly consider Kevin and Cathy's postulate that court-ordered visitation would constitute an improper interference with their "intact" family.

Judgment reversed and remanded for a hearing and any other proceedings consistent herewith.

SULLIVAN and MILLER, JJ., concur.